# IN THE COURT OF APPEALS OF TENNESSEE, WESTERN SECTION
## AT NASHVILLE
_____

|  |  |  |
|---|---|---|
| **RON CHRISTIAN,** | ) | Davidson County Chancery Court |
|  | ) | Rule No. 94-2785-II |
| Petitioner/Appellant. | ) |  |
|  | ) |  |
| VS. | ) | C. A. No. 01A01-9508-CH-00368 |
|  | ) |  |
| **TENNESSEE PETROLEUM** | ) |  |
| **UNDERGROUND STORAGE TANK** | ) |  |
| **BOARD and J. W. LUNA, as** | ) |  |
| **COMMISSIONER OF TENNESSEE** | ) |  |
| **DEPARTMENT OF ENVIRONMENT** | ) |  |
| **AND CONSERVATION**, | ) |  |
|  | ) |  |
| Respondents/Appellees. | ) |  |
|  | ) |  |

**FILED**

**March 8, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

From the Chancery Court of Davidson County at Nashville.
**Honorable C. Allen High, Chancellor**

**Margaret Jane Powers**, Crossville, Tennessee
Attorney for Petitioner/Appellant.


**Charles W. Burson**, Attorney General & Reporter
**Elizabeth P. McCarter**, Senior Counsel
**Sharon O. Jacobs**, Assistant Attorney General
Attorneys for Respondents/Appellees.

OPINION FILED:

**AFFIRMED**


**FARMER, J.**


**CRAWFORD, P.J., W.S.** : (Concurs)
**CANTRELL, J.** : (Concurs)

For a second time we address this matter which concerns Appellant Ron Christian's eligibility for assistance from the petroleum underground storage tank fund, established in T.C.A. § 68-215-110. The Tennessee Petroleum Underground Storage Tank Board (Board), an appellee in this action,[1] found Christian ineligible for assistance due to his failure to reestablish fund eligibility by, *inter alia*, failing to conduct a site check of his property. Upon review in the chancery court, the Board's decision was upheld. For reasons hereinafter set forth, we affirm.

These parties were before us previously in *Christian v. Tennessee Petroleum Underground Storage Tank Board*, No. 01A01-9410-CH-00489 (Tenn. App. April 26, 1995).[2] We reiterate here that Christian is the owner and operator of four petroleum underground storage tanks (USTs) located at the "Country Corner Market" in Williamson County. The USTs were duly registered with the Tennessee Department of Environment and Conservation (TDEC). *Christian*, slip op. at 1. The issue in *Christian* was limited to a determination of whether the chancery court correctly affirmed the Board's decision that Appellant lost fund eligibility due to the untimely payment of his annual registration fees, required under T.C.A. § 68-215-109 and the Board's rules and regulations promulgated thereunder. We affirmed, concluding that "[o]ne could still be considered fund ineligible for the time period in which the fees were not paid as scheduled." *Id*. at 6. The present appeal concerns whether the appellees may lawfully impose other conditions as prerequisites to the restoration of Christian's fund eligibility, in addition to the payment of annual fees and late penalties.

The Board's final order contains the following findings of fact:

[Christian] paid annual tank fees on April 10, 1991 and paid the late penalties on June 3, 1991, for fee year 3.

. . . .

[Christian] sold petroleum products from these underground storage tank systems during the time frame of July, 1988 through

[1]The Commissioner of the Tennessee Department of Environment and Conservation is also an appellee.

[2]The record indicates that this appeal relates to a second petition for review filed by Christian with the chancery court during pendency of the first appeal to this Court. The second petition related to matters not originally tried.

July, 1990 and continues to sell petroleum products from these tanks.

In the interim between [Christian's] payment of tank fees for fee year 3 and the assessment and payment of the late penalties thereon, the Division issued [Christian] a letter dated April 26, 1991, directing him to conduct a "site check" in accordance with the enclosed "Site Check Policy" (which was not enclosed), further concluding that [Christian] was required to document that the site is not contaminated in order to [reestablish] Fund eligibility.

On or about September 9, 1991, the Division of Underground Storage Tanks (hereinafter the "Division") generated and mailed correspondence to Country Corner Market which announced the December 22, 1991 deadline for beginning leak detection on all tanks installed between 1970 and 1974. Enclosed with the letter was a form for reporting to the Division the method of leak detection utilized at the site. [Christian] failed to report using any method of release detection at this facility.

On or about February 27, 1992, the Division received a complaint of a possible contaminated spring in Thompson Station, Tennessee. . . . Laboratory analysis of water samples collected during this investigation confirmed the presence of benzene and total petroleum hydrocarbons in concentrations above the clean-up levels set forth in the Underground Storage Tank Program Rules (1200-1-15) for one of the springs that was sampled.

On or about March 4, 1992, Division personnel sent correspondence to [Christian] informing him of the discovery of petroleum contamination and requiring that a systems test be conducted . . . and results to be submitted to the Division . . . .

On or about July 7, 1992, Division personnel collected soil samples at the Country Corner Market approximately 20 feet from the tank pit. Laboratory analysis confirmed the presence of BTX . . . in concentrations above the clean up levels . . . .

. . . .

On or about September 30, 1992, [Christian] performed systems tests at Country Corner Market. A 3000 gallon gasoline [UST] system was discovered to have a leak. . . .

. . . .

Division personnel notified, by certified letter dated November 30, 1992, [Christian] of the requirements he must follow in response to a confirmed release of petroleum. . . .

. . . .

On or about January 20, 1993, the Division received an Initial Site Characterization Report from [Christian]. However, this document did not contain results of a site check as required by Rule 1200-1-15-.06(4)(a)3.

. . . .

[Christian] has not conducted a site check on this petroleum site.

. . . .

> [Christian] has not conducted an environmental assessment of his petroleum site nor initiated corrective action to address the confirmed release from his tank.

The Board concluded that Christian failed to restore fund eligibility by failing "to provide evidence of leak detection, failure to pay annual tank fees in fee year 2, failure to timely pay annual tank fees in year 3, and failure to conduct a site check." The Board ordered Christian to conduct an environmental assessment and, upon approval, to implement a corrective action plan.

As heretofore stated, we determined in *Christian* that Appellant lost fund eligibility for failure to make timely payment of his annual registration fees. Whether or not he must undergo a site check in addition to paying all fees and late penalties to reestablish his fund eligibility is at issue here. Thus, we must determine whether the Board's decision in this respect prejudices Christian's rights because it is:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

*See* T.C.A. § 4-5-322(h).[3]

On appeal, Christian asserts that Appellees failed to comply with the Uniform Administrative Procedures Act (UAPA) "in not promulgating rules encompassing the 'site check' . . . provisions which they erratically require of some tank owners." Christian apparently refers to the Division's[4] use of a "guidance memorandum" in ordering Christian to conduct a site check.

---

[3]We note that Appellant lists some 7 issues on appeal and has chosen to reargue many of the issues decided by this Court in *Christian*. We will not readdress those issues here.

[4]The rules identify "division" as that designated by the Commissioner of the Department of Health and Environment as the agency to implement the "Underground Storage Tank Program in Tennessee." Program Rule 1200-1-15-.09(2)(j). This responsibility is now that of the TDEC. *See Christian*, slip op. at 1 n. 2.

The April 26, 1991 letter to Christian from TDEC, in regard to restoration of his fund eligibility, states:

> Dear UST Owner/Operator:
>
> If you wish to reestablish eligibility to the State Fund . . . you must take each of the following steps:
>
> 1. You must make sure all tanks are properly registered.
>
> 2. You must make sure all current and past due fees and late charges are paid.
>
> 3. You must conduct a site check in accordance with the enclosed Site Check Policy.
>
> Once these things have been done and it has been documented that the site is not contaminated, you will reestablish Fund eligibility . . . .

The "policy" as expressed in an office correspondence memorandum to all Division staff, requires the analytical work to be performed by a laboratory on the "UST Approved Laboratory List." The work to be performed during the site check must be pre-approved by the Technical Review Staff. Soil samples are required at certain specified locations near the tank and at certain depths. The samples are to be analyzed for certain specified chemicals depending on the type of petroleum distributed.

Part two of the UAPA specifically addresses the rulemaking procedures of an agency. The UAPA defines a "rule" as "each agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency." T.C.A. § 4-5-102(10). An "agency" is "each state board, commission, committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine contested cases; ". T.C.A. § 4-5-102(2). The Tennessee Petroleum Underground Storage Tank Act (Act) authorizes the Board to "promulgate and adopt such rules and regulations in accordance with the provisions of the [UAPA]." T.C.A. § 68-215-107(f). In addition, the Act provides that any person seeking review of an order for correction may file a written petition with the Commissioner, requesting a hearing before the Board. The hearing is to be conducted by the Board in accordance with the UAPA. T.C.A. § 68-215-119(a)(1) and (b).

Clearly, TDEC and the Division are not authorized to promulgate rules and regulations or hear contested cases under the Act. *See Fentress County Utility District v. Tennessee Water Quality Control Board*, No. 01A01-9406-CH-00295, slip op. at 4 (Tenn. App. January 11, 1995). Instead, the Board's rules provide that the Division is "to implement" the UST program. *See* Rule 1200-1-15-.09(j). Thus, they are not "agencies" for purposes of the UAPA and the "policy" relied upon by the Division cannot be considered a "rule," subject to UAPA compliance. The policy, however, must assist the Division in its implementation of the program.

Program Rule 1200-1-15-.09(5) pertains to the "[l]oss and [r]estoration of [f]und [e]ligibility" and, as here pertinent, states:

> (b) If at any time the Division determines that an owner or operator has failed to maintain Fund eligibility, the Division will provide notice to the owner or operator of such non-compliance. The owner or operator shall have thirty (30) days from receipt of such notice to provide evidence of compliance with all Fund eligibility requirements or such other time period as the Division may allow. If, after this time period, the owner or operator fails to resolve the non-compliance, the Director shall issue a Notice of Fund Ineligibility and enforcement actions which may include penalty assessment may be initiated. The owner or operator shall have 60 days from receipt of Notice of Fund Ineligibility to place in force alternate financial assurance . . . .

> (c) An owner or operator that has been issued a Notice of Fund Ineligibility must resolve the non-compliance *to the satisfaction of the Division for Fund eligibility to be restored*. . . . It is the responsibility of the owner or operator to provide evidence of compliance to the Division. *The Fund will not cover either investigative or corrective action costs or third party liability claims associated with a release which occurred during the time of Fund ineligibility.* (Emphasis added.)

We find that under the foregoing rule, it is within TDEC's discretion to impose a site check requirement to ascertain whether a release has occurred during a period of fund ineligibility. The rule clearly prohibits the application of fund monies for corrective action costs due to a release occurring during the time of fund ineligibility. Without the site check requirement, how else could "a release which occurred during the time of fund ineligibility" be discovered? Further, we do not find the record to suggest that the Board has inconsistently or arbitrarily imposed such requirement.

We conclude that the determination of the Board requiring Christian to undergo a site

check to reestablish fund eligibility comports with T.C.A. § 4-5-322(h). The judgment of the trial court upholding the Board's decision is, therefore, affirmed. Costs are assessed against Ron Christian, for which execution may issue if necessary.

_____
FARMER, J.

_____
CRAWFORD, P.J., W.S. (Concurs)

_____
CANTRELL, J. (Concurs)