# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

**March 27, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

EDWARD H. MOODY,       )
                           )
     Plaintiff/Appellant,     )
                           )    Appeal No.
                           )    01-A-01-9707-CH-00311
VS.                      )
                           )    Davidson Chancery
                           )    No. 97-159-III
STATE OF TENNESSEE DISTRICT   )
PUBLIC DEFENDERS CONFERENCE, )
                           )
     Defendant/Appellee.    )

## APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
## AT NASHVILLE, TENNESSEE

### THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

J. RONNIE GREER
P. O. Box 454
Greeneville, Tennessee 37744
     Attorney for Plaintiff/Appellants

JOHN KNOX WALKUP
Attorney General and Reporter

GINA J. BARHAM
Deputy Attorney General
425 Fifth Avenue North
Nashville, Tennessee 37243
     Attorney for Defendant/Appellee

## AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCURS:
TODD, P.J., M.S.

DISSENTS:
KOCH, J.

# O P I N I O N

An assistant district public defender filed a complaint in the Davidson County Chancery Court, seeking a declaratory judgment under the Uniform Administrative Procedures Act (UAPA) that the District Public Defenders' Conference had set his salary level too low, in light of his years of prior government service. The Chancery Court dismissed the complaint for lack of subject matter jurisdiction, on the ground that the Conference does not meet the definition of an agency that is found in the UAPA, and that it is therefore not subject to the Act's provisions. We affirm.

I.

Edward H. Moody was appointed as an assistant district public defender for the Third Judicial District of Tennessee on July 1, 1992. Prior to this appointment, he had served as a state legislator, a special agent of the FBI, a Hamblen County general sessions judge and an assistant district attorney. Mr. Moody's compensation as an assistant public defender was set in accordance with Tenn. Code Ann. § 8-14-207. The version of the statute in effect at that time set the compensation of assistants at a varying percentage of the salary received by the district public defender, with the exact percentage to be determined by the number of years of prior service.

Under the statute, the maximum percentage of a public defender's salary that an assistant could receive was 85%, which could be achieved after nine years of satisfactory service. Mr. Moody was found to have qualified for this level of compensation as a result of prior state service.

In 1994, Tenn. Code Ann. § 8-14-207 was amended to increase the compensation of district public defenders, and to alter the method of calculating compensation for assistants. Starting July 1, 1994, those salaries were to be for a fixed amount that increased with additional years of service, rather than for a

percentage of the public defender's salary. While under the prior scheme the salary of assistants topped out after nine years of service, under the new law they were entitled to annual increases until after they had completed their twentieth year of service.

Mr. Moody was given credit for eleven years of prior service, and his salary was set accordingly. He subsequently petitioned the District Public Defenders Conference for a declaratory order that by virtue of more than twenty years of prior government service, he was entitled to the maximum salary the law permitted assistant public defenders.[1] The conference refused to issue such a declaratory order, and Mr. Moody filed a complaint for a declaratory judgment and for back pay in the Chancery Court of Davidson County, invoking the provisions of Tenn. Code Ann. § 4-5-224 of the Uniform Administrative Procedures Act (UAPA).

The trial court dismissed the complaint for lack of subject matter jurisdiction, finding that the UAPA did not apply to the District Public Defenders Conference, because that body did not meet the definition of an "agency," as set out in Tenn. Code Ann. § 4-5-102(2) of the UAPA. This appeal followed.

## II.

The Uniform Administrative Procedures Act was enacted in 1974, and was ". . . designed to clarify and bring uniformity to the procedure of state administrative agencies and judicial review of their determination . . . ." Tenn. Code

---

[1]Under both the earlier and the later statute, Tenn. Code Ann. § 8-14-207(d) reads: In computing the number of years of service under the salary scale applicable to full-time assistants and district investigators, credit may be given for an assistant's prior experience as a licensed attorney, full-time, salaried law enforcement officer or criminal investigator for a district attorney general. Such credit shall be given only upon the recommendation of the district public defender making the appointment and the approval of the executive committee of the district public defenders conference, and may be for any period of time up to, but not exceeding the assistant's experience as a licensed attorney or district investigator.

Ann. § 4-5-103(a). Notwithstanding this breadth of purpose, certain governmental

bodies (including the governor, the legislature and the courts), and certain kinds of

proceedings, are specifically excluded from the provisions of the Act. Tenn. Code

Ann. § 4-5-106. Further, the Act has also been found to be ". . . inapplicable to

proceedings that do not fit within its adjudicatory or rule-making definitions." *Mid-*

*South Indoor Horse Racing, Inc. v. Tennessee State Racing Commission*, 798 S.W.2d

531, 536 (Tenn. App. 1990). *See also Christian v. Tennessee Petroleum Storage*

*Tank Board*, 928 S.W.2d 927 (Tenn. App. 1996).

Tenn. Code Ann. § 4-5-102 of the Act defines an agency as follows:

> (2) "Agency" means each state board, commission, committee, department, officer, or any other unit of state government authorized or required by any statute or constitutional provision to make rules or to determine contested cases;

Thus, a governmental body is not an agency subject to the UAPA,

unless it is authorized or required to make rules or determine contested cases. The

same statute defines "contested case" and "rule" as follows:

> (3) "Contested case" means a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing . . .
> . . .
> (10) "Rule" means each agency statement of general applicability that implements or prescribes law or policy or describes the procedures or practice requirements of any agency. "Rule" includes the amendment or repeal of a prior rule, but does not include:
> (A) Statements concerning only the internal management of state government and not affecting private rights, privileges or procedures available to the public;
> . . .

Further portions of the Act set out in detail the procedures to be followed

for rulemaking, including public hearings on the content of proposed rules, the

conduct of those hearings, approval of the legality of the rules by the Attorney

General, and the filing of the rules with the Secretary of State, with subsequent publication in the monthly administrative register. See Tenn. Code Ann. § 4-5-201, et seq.

The conduct of contested cases is governed by Tenn. Code Ann. § 4-5-301, et seq. The judicial or quasi-judicial nature of such proceedings is indicated by sections on such matters as separation of functions, ex-parte communications, representation, discovery subpoenas and rules of evidence.

The District Public Defenders Conference was established by the Legislature in 1989. There is nothing in the statute establishing the Conference to indicate that the Legislature intended to authorize it to make rules or to determine contested cases in accordance with the requirements of Tenn. Code Ann. §§ 4-5-201, et seq. and 4-5-301, et seq. The Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Wilson v. Johnson County*, 879 S.W.2d at 809 (Tenn. 1994). Thus, it could have easily made the Conference subject to the UAPA if it so desired.

The word "rules" is used in the statutory description of the duties of the Conference, but the context does not appear to signify the sort of rule-making procedures that are contemplated by the UAPA:

> **8-14-303. Duties.--** It is the duty of the conference to give consideration to the enactment of such laws and rules of procedure as in its judgment may be necessary to the more effective administration of justice and thus promote peace and good order in the state. To this end, a committee of its members shall be appointed to draft suitable legislation and submit its recommendations to the general assembly.

We must thus conclude that the Conference is not authorized or required by statute to make rules or to conduct contested cases, as those terms are defined in the UAPA.

## III.

Appellant relies almost entirely on a single case, *Crawford v. Tennessee Consolidated Retirement System*, 732 S.W.2d 293 (Tenn. App. 1987) for its argument that the Public Defenders Conference should be subject to the Act. In that case, this court found that members of the Attorneys General Retirement System were entitled to bring a suit for declaratory judgment under the UAPA against the Tennessee Consolidated Retirement System (TCRS), in part because the TCRS was required by its enabling statute, Tenn. Code Ann. § 8-34-201, et seq., to adopt and publish rules and regulations for the administration of the funds it controlled. 732 S.W.2d at 295. Tenn. Code Ann. § 8-34-313.

The court went on to discuss the function of the TCRS and to state that

> "[t]he establishment of mortality and service tables and interest rates is certainly a statement of general applicability that implements law or policy and directly affects the benefits accruing to all public employees subject to the Consolidated Retirement System, and are not merely rules for the internal administration of the agency.
> . . .
> ". . . there is an additional reason why the Board is an adjudicative agent. By being charged with the exclusive management of a division of State Government with exclusive authority to administer and disburse trust funds to thousands of governmental retirees, the Board is vested with implied and necessary power and duty to determine the amounts to be disbursed to each retiree. This power involves rights of individuals which may not be infringed without due process which brings to bear a constitutional mandate to conduct fair hearings and render just decisions in the 'contested' cases which must of necessity arise in the performance of such a duty."

732 S.W.2d at 296.

Appellant argues that the logic applied to the TCRS applies with equal force to the Tennessee Public Defenders Conference, by virtue of the obligation of that body's executive director to "certify the level of compensation awarded to assistant district public defenders based on prior service credits," Tenn. Code Ann. § 8-14-207(b)(3), and to

> "[d]raw and approve all requisitions for the payment of public monies appropriated for the maintenance and operation of the judicial branch of government which relate to the offices of the district public defenders, and [to] audit claims and prepare vouchers for presentation to the Department of Finance and Administration, including payroll warrants, . . . ."

Tenn. Code Ann. § 8-14-403(f).

If we were to adopt the appellant's argument, we would be compelled to find that any governmental body that was authorized to handle public funds falls under the provisions of the UAPA. However, there is an important distinction between the funds administered by the TCRS and those administered by the Conference. In dealing with retirement benefits, the TCRS is dealing with the vested rights of state employees, see *Abernathy v. TCRS*, 655 S.W.2d 143 (Tenn. 1983). As noted in *Crawford*, disputes about such rights necessarily involve due process proceedings that must meet constitutional standards.

The appellant has conceded that Assistant Public Defenders are employees at will, and so they do not have vested rights in their employment that require constitutional protection. Thus, just as the Conference is not required or authorized by any statutory provision "to make rules or to determine contested

cases,"[2] there is also no constitutional provision requiring it to take such action, and it is not an "agency" subject to the provisions of the UAPA.

## IV.

The order of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.


_____
BEN H. CANTRELL, JUDGE


CONCUR:



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION



DISSENTING OPINION:
WILLIAM C. KOCH, JR., JUDGE

_____

[2]In 1984 an additional sentence was added to the definition of a contested case in Tenn. Code Ann. § 4-5-102(3). That sentence says, "an agency may commence a contested case at any time with respect to a matter within the agency's jurisdiction." It could be argued that by this provision all agencies of state government are authorized to determine contested cases. We are of the opinion, however, that the definition of agency in Tenn. Code Ann. § 4-5-102(2) also applies to this provision, so that only those agencies already authorized or empowered to make rules or determine contested cases may commence a contested case with respect to a matter within its jurisdiction.