# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

FILED

June 2, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STONE FORT LAND COMPANY, | ) | |
| | ) | |
| Petitioner/Appellant, | ) | Davidson Chancery No. 95-136-III |
| | ) | |
| v. | ) | |
| | ) | Appeal No. 01A01-9707-CH-00370 |
| THE TENNESSEE PETROLEUM | ) | |
| UNDERGROUND STORAGE TANK | ) | |
| BOARD, and JUSTIN P. WILSON, | ) | |
| COMMISSIONER OF THE | ) | |
| DEPARTMENT OF ENVIRONMENT | ) | |
| AND CONVERSATION, | ) | |
| | ) | |
| Respondents/Appellees. | ) | |

APPEAL FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR

For the Petitioner/Appellant:

C. Crews Townsend
Brian E. Humphrey
Chattanooga, Tennessee

For the Respondents/Appellees:

John Knox Walkup
Elizabeth P. McCarter
Nashville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCUR:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This case involves eligibility for environmental cleanup funds. The plaintiff landowner appeals the decision of the Tennessee Petroleum Underground Tank Board finding the plaintiff ineligible to receive reimbursement from the petroleum underground storage tank fund established in Tennessee Code Annotated § 68-215-110. Upon initial review in chancery court, the Board's decision was reversed. The trial court subsequently reconsidered its decision and, based on recent Tennessee appellate decisions, affirmed the Board's decision to deny assistance. We affirm.

Stone Fort Land Company ("Stone Fort") owns property located at 4400 Amnicola Highway, Chattanooga, Tennessee (the "Property"). In 1968, pursuant to a long-term lease, Stone Fort constructed for the lessee a building and other improvements on the Property, including a 500-gallon underground storage tank ("UST") for the storage of used oil. In 1975, Stone Fort installed a second 500-gallon UST on the Property.

In 1988, the Tennessee Petroleum Underground Storage Tank Act (the "Act") took effect. The Act required that all USTs in use as of July 1, 1988, be registered within one year, by June 30, 1989. Tenn. Code Ann. § 68-215-106(a)(1) (1996). Owners and operators of USTs are required to pay an annual fee for each UST. Tenn. Code Ann. § 68-215-109(a) (1996). In addition, the Act established the Petroleum Underground Storage Tank Fund (the "Fund"). Tenn. Code Ann. § 68-215-110(a) (1996). The Fund is available to reimburse property owners for expenditures for "the reasonable and safe cleanup" of petroleum sites within the state. Tenn. Code Ann. § 68-215-111(a) (1996). Pursuant to the Act, the Tennessee Petroleum Underground Storage Tank Board (the "Board") promulgated rules addressing "Fund Eligibility Requirements" and "Loss, Restoration, and Establishment of Fund Eligibility." Tenn. Comp. R. & Regs. tit. 14, ch. 1200-1-15-.09(4)(a)-(5)(a) (1998).

Stone Fort did not register the two USTs by the required date, nor did it pay the mandated fees.

In 1991, Stone Fort sought to refinance a loan secured by several of the company's properties, including the Property at issue. A prospective lender hired Geological and Environmental Services, Inc. ("Environmental Services") to conduct a review of the Property. Environmental

Services discovered the existence of the USTs on the property and learned that the USTs were not registered as required by the Act. On September 13, 1991, Stone Fort submitted the necessary forms and fees to the Division of Underground Storage Tanks (the "Division") of the Department of Environment and Conservation to register the USTs and pay the late annual fees.

In October 1991, Environmental Services performed an environmental assessment of the Property. The assessment revealed elevated levels of petroleum hydrocarbons in the soil. As a result, Stone Fort removed the USTs and remediated the soil contamination. Subsequently, on November 19, 1992, Stone Fort submitted a request to the Division for reimbursement from the Fund for its expenditures to clean up the contaminated soil. On April 8, 1993, the Division denied Stone Fort's request, finding that Stone Fort had never established eligibility for Fund reimbursement. The Division advised Stone Fort that, in order to become Fund eligible, it must comply with the Rules by (1) insuring that all storage tanks were properly registered; (2) insuring that all current and past due fees and late charges were paid; (3) conducting a site check with clean soil sample results. The third requirement, the clean soil sample, was at the time an internal policy of the Division, referred to as the Site Check Policy. The Site Check Policy required owners to conduct soil sample tests, and sample results were required to be below stated levels of contamination. Stone Fort was not informed by the Division of the Site Check Policy before Stone Fort submitted its application for reimbursement.

Stone Fort then sought a hearing before the Board. The contested hearing before the Board was conducted on September 21, 1994. The Board decided to permit Stone Fort to seek reimbursement from the Fund, despite the fact that Stone Fort had failed to comply with the Fund eligibility requirements. The Board allowed Stone Fort to seek reimbursement because it made a good faith effort to comply with the eligibility requirements and the Division's failure to notify Stone Fort of the Site Check Policy before Stone Fort submitted its application for reimbursement.

After the Board's decision, pursuant to Tennessee Code Annotated § 4-5-322(a)(2), the Tennessee Department of Environment and Conservation ("the Department") filed a Petition for Judicial Review with the Davidson County Chancery Court. On October 4, 1995, the trial court remanded the matter to the Board for clarification of the reasons for its decision, noting that Stone Fort had not complied with the Act or the Rules.

On remand and after another hearing, the Board reversed its initial decision. It found that

2

Stone Fort was ineligible for Fund assistance because it failed to register the USTs and pay the required annual fees.

Stone Fort then sought judicial review of the Board's decision, pursuant to Tennessee Code Annotated § 4-5-322 (h). This statute provides:

> The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5) (1996). After a hearing, the trial court reversed the Board's decision. The trial court noted that it was undisputed that registration of the USTs and payment of the annual fees, though not timely, occurred before the contamination of the soil was discovered. It observed that there was no allegation that the tardy registration and payment of fees was motivated by knowledge or suspicion that it would have to conduct an environmental cleanup of the Property. The trial court found that the Act did not give the Board authority to restrict Fund access to property owners who had timely registered and paid the required fees. Thus, under Tennessee Code Annotated § 4-5-322(h), the trial court concluded that the Board's decision to deny Stone Fort Fund eligibility was "in violation of statutory provisions." Tenn. Code Ann. § 4-5-322(h)(1) (1996).

The Board then filed a motion to reconsider, citing this Court's decisions in *Christian v. Tennessee Petroleum Underground Storage Tank Bd*, No. 01A01-9410-CH-00489, 1995 WL 241331 (Tenn. App. April 26, 1995) *(Christian I)* and *Christian v. Tennessee Petroleum Underground Storage Tank Bd*, 928 S.W.2d 927 (Tenn. App. 1996) *(Christian II)*. The trial court granted the motion and set another hearing.

Upon reconsideration, the trial court noted that while the facts in the *Christian* decisions were distinguishable from those in this case, the Court in *Christian* nevertheless considered the same rules at issue in the case at bar. The trial court found that it was bound by the rulings in *Christian* and reversed its earlier decision. Thus, the trial court affirmed the Board's decision to deny Stone

3

Fort eligibility for Fund reimbursement. From this order, Stone Fort now appeals.

On appeal, Stone Fort contends the trial court was correct in its first ruling that the Board exceeded its statutory authority in promulgating rules limiting fund eligibility to property owners who timely registered and paid the annual fees. Stone Fort asserts that the trial court erroneously relied on *Christian I* and *Christian II* in its subsequent affirmance of the Board's denial of Fund reimbursement to Stone Fort. In the alternative, Stone Fort asserts that it complied with all requirements, and that the Board had waived application of the site check requirement.

We review the Board's decision pursuant to the same statute that governed the trial court's decision, Tennessee Code Annotated § 4-5-322(h), which provides that we may "reverse or modify" the Board's decision if it prejudices the rights of the petitioner because it is:

> (1) In violation of constitutional or statutory provisions;
> (2) In excess of the statutory authority of the agency;
> (3) Made upon unlawful procedure;
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.

*See* Tenn. Code Ann. § 4-5-322(h) (1996).

Stone Fort contends the Board exceeded its statutory authority in promulgating rules which require the registration of the USTs and the payment of fees annually and thereby limiting Fund eligibility. Stone Fort argues that the statute fails to include a temporal limitation, and thus any requirement created by the Board in limiting Fund eligibility exceeds its statutory authority. The Board argues that Stone Fort ignores other provisions in the statute, and those provisions, in addition to *Christian I* and *Christian II,* allow the Board to promulgate rules limiting Fund eligibility.

Tennessee Code Annotated § 68-215-107(f) addresses the authority of the Board to promulgate rules implementing the Act. § 68-215-107(f) states in part: "The board may promulgate and adopt such rules and regulations in accordance with the provisions of the Uniform Administrative Procedures Act, complied in title 4, chapter 5, as are required elsewhere in this chapter or are otherwise necessary or desirable to implement the provisions of this chapter . . . ." Tenn. Code Ann. § 68-215-107(f) (1996).

This Court addressed the Board's authority to promulgate rules and regulations implementing the Tennessee Petroleum Underground Storage Tank Act in *Christian v. Tennessee Petroleum Underground Tank Board*, 1995 WL 241331 (Tenn. App. April 26, 1995) (*Christian I*). In

4

***Christian I***, Christian, the owner of properly registered USTs, failed to timely pay annual registration fees for the time period July 1, 1990, through June 30, 1991. ***Id.*** After the Division sent two notices requesting payment and informing Christian of the consequences resulting in untimely payment, the Division, on April 26, 1991, notified Christian that the USTs were deemed ineligible pursuant to untimely payment of fees. ***Id.*** The notice required Christian to pay "all past due fees and late penalties and have soil samples analyzed for contamination" in order to "reestablish" fund eligibility. ***Id.*** By May 30, 1991, Christian paid the outstanding registration fees and penalties. ***Id.***

Subsequently, Christian filed a petition with the Board contending that the Board's decision to revoke fund eligibility was arbitrary and capricious. ***Id.*** at \*2. The sole issue on appeal was whether Christian lost fund eligibility pursuant to untimely payment of annual registration fees as required under Tennessee Code Annotated § 68-215-109 and the Board's rules and regulations promulgated under the statute. ***Id.*** ***Christian I*** did not address the Site Check Policy.

In ***Christian I***, the Court discussed the Act and the Board's authority to promulgate rules and regulations pursuant to the Act:

> The Tennessee Petroleum Underground Storage Tank Act (Act) grants the Board authority to promulgate, in accordance with the Uniform Administrative Procedures Act, those rules and regulations pertaining to the "[r]equirements for maintaining evidence of financial responsibility for taking corrective action and compensating third parties for bodily injury and property damage caused by sudden and non-sudden accidental releases arising from operation of a petroleum [UST]" and "the mechanism by which the fund may provide relief" if and when such events occur. The fund is available "to assist with the financial responsibility requirements for owners and/or operators of petroleum [USTs], including cleanup of contamination . . . ." To qualify for fund assistance, the owner and/or operator must have paid "the required [UST] fee." The Board is authorized to promulgate those rules necessary for the "assessment and collection" of these fees, including their amounts and the dates when due.

***Christian***, 1995 WL 241331, at \*2 (citations omitted). The Court noted that the Board's rules required "substantial compliance" in order to be Fund eligible, and that "substantial compliance" included the "timely payment of all annual tank fees . . . ." ***Id.*** at 4. The rules set forth procedures for notifying the owner of impending Fund ineligibility. ***Id.*** The Court noted that the Christian's actions were in "direct contravention" of the Board's rules for Fund eligibility. ***Id.*** at 6. The Court concluded that the Board's denial of Fund eligibility to Christian was "neither arbitrary nor capricious" and was "supported by the evidence." ***Id.***

In ***Christian II***, the same parties were before the Court. ***Christian v. Tennessee Petroleum Underground Storage Tank Board***, 928 S.W.2d 927 (Tenn. App. 1996). As set forth above, on

5

April 26, 1991, the Division notified Christian that the USTs were fund ineligible. *Christian*, 1995 WL 241331, at *1. In order to reestablish fund eligibility, the Division also directed Christian to perform a site check demonstrating that the site had not been contaminated. *Christian*, 928 S.W.2d at 928. On or about September 9, 1991, the Division notified Christian of a December 22, 1991, deadline of requiring owners to implement a method for leak detection. *Id.* Christian failed to respond. *Id.*

On approximately February 27, 1992, the Division received a complaint of a potential contamination near the location of Christian's USTs. *Id.* Subsequently, the Division performed soil sample tests at the location and found contamination. *Id.* at 929. The Division informed Christian of the necessary requirements as a result of a "confirmed release of petroleum." *Id.* Christian sent the Division an "Initial Site Characterization Report." *Id.* However, the report did not contain the results of a site check which was required under the Rules. *Id.*

Christian contended that the Board exceeded its authority in implementing a policy requiring a site check for those owners who were re-establishing Fund eligibility by paying overdue fees. *Id.* at 928. Christian received notification that the USTs were fund ineligible, and that a site check was required in order to regain Fund eligibility. *Id.* Christian challenged the Board's authority in adopting the Site Check Policy. *Id.*

The Court in *Christian II* cited Program Rule 1200-1-15-.09(5)(c):

> An owner or operator that has been issued a Notice of Fund Ineligibility must resolve the non-compliance *to the satisfaction of the Division for Fund eligibility to be restored . . .* It is the responsibility of the owner or operator to provide evidence of compliance to the Division. *The Fund will not cover either investigative or corrective action costs or third party liability claims associated with a release which occurred during the time of Fund ineligibility.* (emphasis in original).

*Id.* at 930. The Court found that the Board was within its authority to require a site check to determine whether a release had occurred during the period of Fund ineligibility:

> The rule clearly prohibits the application of fund monies for corrective action costs due to a release occurring during the time of fund ineligibility. Without the site check requirement, how else could "a release which occurred during the time of fund ineligibility" be discovered? Further, we do not find the record to suggest that the Board has inconsistently or arbitrarily imposed such requirement.

*Id.* at 930-31.

As the trial court concluded upon reconsideration, we find the *Christian* decisions controlling in this case. Most of the arguments proffered by Stone Fort in this case were considered and rejected

by this court in the *Christian* decisions.

Stone Fort argues that *Christian I* is distinguishable case because Christian, the owner of the UST, failed to maintain Fund eligibility by the untimely payment of the annual fees, whereas Stone Fort never established initial eligibility because the USTs were not initially registered. However, Program Rule 1200-1-15-.09(5)(a) states in part: "If at the time of discovery of a release, the Division determines that an owner and/or operator has failed to establish Fund eligibility in accordance with subparagraph (4)(a), corrective action costs and/or third party damages associated with that release are not eligible for coverage by the Fund." Tenn. Comp. R. & Regs. tit. 14, ch. 3 1200-1-15-.09(5) (1998). Program Rule (4)(a) requires both registration of the tank and payment of annual fees in order to acquire and retain fund eligibility. Tenn. Comp. R. & Regs. tit. 14, ch. 3 1200-1-15-.09 (4)(a) (1998). In this case, Stone Fort failed to register the USTs and pay the fees within the period of time set out by the Board.

Stone Fort also argues that *Christian II* is distinguishable because Christian received notice of the Site Check Policy contemporaneous with the payment of the overdue fees. In this case, Stone Fort received no notice of the Site Check Policy until it requested reimbursement from the Fund, fifteen months after late registration and payment of overdue fees. The Board notes Stone Fort could not have established eligibility for these USTs because they failed to timely register and pay fees as required by Program Rule 1200-1-15-.09 (4)(a). In 1992, the site check requirement was an internal policy; in 1995 the Board's Rules were amended to include the Site Check Policy. In 1992, since Stone Fort had failed to timely register and pay fees as required by the Rules, Stone Fort could not establish eligibility for the two USTs on the Property.

Stone Fort asserts a violation of due process for the failure of the Board to give Stone Fort notice of the Site Check Policy. Stone Fort must assert some prejudice on its behalf in the Board's failure to notify them of the Site Check Policy. *See Davis v. Barr*, 646 S.W.2d 914 (Tenn. 1983); *Childs v. Roane County Bd. of Educ.*, 929 S.W.2d 364 (Tenn. App. 1996). There has been no showing in this case that, had the soil sample test been performed at the time Stone Fort says it should have been notified, the results would have shown no contamination as of that date. Therefore, Stone Fort failed to submit evidence demonstrating that the lack of notification by the Board prejudiced Stone Fort. Therefore, the trial court's affirmance of the Board's denial of Fund eligibility is affirmed.

7

The decision of the trial court is affirmed.  Costs are assessed against Appellant, for which execution may issue if necessary.

                                            **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P. J., W.S.**

**DAVID R. FARMER, J.**