IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 6, 2005 Session

## TEXACO REFINING & MARKETING, INC. v. STATE OF TENNESSEE DEPARTMENT OF ENVIRONMENT AND CONSERVATION, DIVISION OF UNDERGROUND STORAGE TANKS

Appeal from the Chancery Court for Davidson County
No. 02-761-I    Irvin H. Kilcrease, Chancellor

No. M2004-00281-COA-R3-CV - Filed September 27, 2005

Texaco Refining & Marketing, Inc. applied for reimbursement of remediation expenses pursuant to the Tennessee Petroleum Underground Storage Tank Act. When Texaco's application was denied by the Tennessee Department of Environment and Conservation, Division of Underground Storage Tanks, Texaco filed this Declaratory Judgment action seeking a ruling that it was eligible for reimbursement from the storage tank fund. The Chancery Court granted Texaco's motion for summary judgment from which the Department appeals. We reverse finding Texaco was not in substantial compliance with the Act because it failed to timely report releases of petroleum, and it had no vested right to reimbursement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; and Elizabeth P. McCarter, Senior Counsel, for the appellant, State of Tennessee Department of Environment and Conservation, Division of Underground Storage Tanks.

Howard E. Jarvis and Tony R. Dalton, Knoxville, Tennessee, for the appellee, Texaco Refining & Marketing, Inc.

### OPINION

Texaco filed this action seeking a ruling that it is "fund eligible" to apply for remediation expenses from the Tennessee Petroleum Underground Storage Tank Fund for a "release" of petroleum products that occurred prior to the enactment of the Tennessee Petroleum Underground Storage Tank Fund Act (the "Act"), Tenn. Code Ann. 68-215-101, *et seq.* The trial court treated Texaco's request for judicial review as a petition for declaratory judgment pursuant to Tenn. Code

Ann. § 4-5-225 and summarily ruled that Texaco was "eligible" to seek reimbursement under the Act for the remediation expenses at issue.[1]

The relevant facts, which are not disputed, are succinctly set forth in the trial court's Memorandum Opinion entered August 29, 2003. It reads in pertinent part:

1. [Texaco] was the owner of four petroleum underground storage tanks (UST's) located at its facility at 504 Lovell Road, Knoxville, Tennessee. In May, 1988, [Texaco] filed an amended Notification for Underground Storage Tanks form with TDEC, Division of Underground Storage Tanks [the Department], evidencing its removal and destruction of these four UST's on or about March 30, 1988.

2. The Tennessee Petroleum Underground Storage Tank Act, now codified as §§ 68-215-101 to 68-215-204 [the Act], became effective July 1, 1988. *See* 1988 Tenn. Pub. Acts, ch. 984, § 31.

3. The [Act] was amended in April, 1990, to reflect the following "[i]t is the intent of the General Assembly that this chapter shall not apply to releases or other events that occurred prior to July 1, 1988." *See* 1990 Tenn. Pub. Acts, ch. 855, § 1.

4. In March, 1991, [Texaco] discovered a release of petroleum hydrocarbons at its location at 504 Lovell Road, Knoxville, during the course of a routine real estate assessment.

5. [Texaco] first reported the discovery of the release to [the Department] during a telephone call on June 14, 1991, between project engineer, Jill Norman, and UST Division employee, Steve Wilson. [Texaco] followed up with written notification to [the Department] on June 20, 1991.

6. In May, 1998, [Texaco] submitted to [the Department] an application for authorization for fund eligibility seeking reimbursement from the UST Fund for assessment and remediation expenses incurred at the 504 Lovell Road location from 1991 forward.

7. On June 8, 1998, [the Department's] UST Division notified [Texaco] in writing that its application for fund coverage for contamination clean-up at this site was denied, because the release occurred before July 1, 1988.

---

[1]Texaco entitled its initial pleading as a Petition for Judicial Review of Administrative Decision pursuant to Tenn. Code Ann. 4-5-322. The Chancellor determined the procedure was only applicable to a person aggrieved by a final decision in a contested case and Texaco was not appealing a ruling from a contested case. Thereafter, Texaco amended its petition to seek a declaratory judgment.

8.  In July, 1998, [Texaco] filed a Petition to Contested [sic] Case Hearing and Declaratory Order before the UST Board.

9.  On January 10, 2002, [the Department] notified [Texaco's] counsel in writing that it had re-evaluated [Texaco]'s fund eligibility status and determined that [Texaco] was still ineligible for Fund reimbursement because the release was not reported to the Division before April 11, 1990.

The issue presented to the trial court was the applicability of the Act, Tenn. Code Ann. § 68-215-101, *et seq*., to Texaco's application for fund reimbursement eligibility.  The trial court found it significant that the Act was amended in April of 1990, to state: "It is the intent of the general assembly that this chapter shall not apply retroactively to releases or other events that occurred prior to July 1, 1988." Tenn. Code Ann. § 68-215-102(c).  It also found, "[t]he construction of the . . . Act has been determined by the Court of Appeals in *Memphis Publishing Co. v. Tennessee Petroleum Underground*, 1993 WL 476292 (Tenn. Ct. App. 1993)."  With that conclusion, the trial court went on to find:

> The facts in *Memphis Publishing Company*, ("MPC") are similar to the facts in the instant case.  MPC discovered contamination on its property in August 1987.
>
> The Division denied MPC's application for fund eligibility based on the restriction in Tenn. Code Ann. § 68-215-102 (c), which barred the application of the Act for releases or events occurring prior to July 1, 1988.
> . . .
>
> Finally, the Memphis Court held that the original Act was intended to cover, for fund reimbursement, all releases, regardless of date. *Id*. 6

Based upon the foregoing findings of fact and conclusions of law, the trial court declared that Texaco was "entitled to have its application for fund eligibility regarding its site at [Texaco] No. 2-471174, 504 Lovell Road, Knoxville, considered by [the Department], without regard to the dates of releases of the contamination."  Thus, the motion for summary judgment filed by Texaco was granted, and the motion for summary judgment filed by the Department was denied.[2]

The Department appealed and contends the trial court erred in three ways: one, finding *Memphis Publishing Co. v. Tennessee Petroleum Underground Storage Tank Board,* No. 01A01-9305-CH-00202, 1993 WL 476292 (Tenn. Ct. App. Nov. 19, 1993), the "law of the case" with respect to Texaco's release and application for fund reimbursement; two, finding that Texaco had a "vested right to reimbursement"; and, three, finding Texaco in "substantial compliance" with the

---

[2]The chancellor additionally remanded the case to the Division for reconsideration of Texaco's application for fund eligibility, in accordance with this Memorandum Opinion.

Act.  The Department also contends Texaco was not in "substantial compliance" with the Act, based upon its failure to timely report; therefore, Texaco was not "eligible" for reimbursement.

## STANDARD OF REVIEW

The issues were resolved in the trial court upon summary judgment.  Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).  This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997).  We consider the evidence in the light most favorable to the non-moving party and resolve all inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).  When reviewing the evidence, we first determine whether factual disputes exist.  If a factual dispute exists, we then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *Rutherford v. Polar Tank Trailer, Inc.*, 978 S.W.2d 102, 104 (Tenn. Ct. App. 1998).

Summary judgments are proper in virtually all civil cases that can be resolved on the basis of legal issues alone, *Byrd v. Hall*, 847 S.W.2d at 210; *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001); however, they are not appropriate when genuine disputes regarding material facts exist. Tenn. R. Civ. P. 56.04.  The party seeking a summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d at 695.  Summary judgment should be granted at the trial court level when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion, which is the party seeking the summary judgment is entitled to a judgment as a matter of law. *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002); *Webber v. State Farm Mutual Automobile Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001).  The court must take the strongest legitimate view of the evidence in favor of the non-moving party, allow all reasonable inferences in favor of that party, discard all countervailing evidence, and, if there is a dispute as to any material fact or if there is any doubt as to the existence of a material fact, summary judgment cannot be granted. *Byrd v. Hall*, 847 S.W.2d at 210; *EVCO Corp. v. Ross*, 528 S.W.2d 20 (Tenn. 1975).  The moving party must affirmatively negate an essential element of the non-moving party's claim or establish an affirmative defense that conclusively defeats the non-moving party's claim. *Cherry v. Williams*, 36 S.W.3d 78, 82-83 (Tenn. Ct. App. 2000).

## THE MEMPHIS PUBLISHING OPINION

The trial court's decision was based in part on the conclusion the "construction of the . . . Act has been determined" in *Memphis Publishing Co. v. Tennessee Petroleum Underground Storage*

*Tank Board,* No. 01A01-9305-CH-00202, 1993 WL 476292 (Tenn. Ct. App. Nov. 19, 1993) (hereinafter *Memphis Publishing I*).[3]  We find this conclusion erroneous.

*Memphis Publishing I*, the opinion upon which the Chancellor relied, was appealed to the Tennessee Supreme Court.  On May 9, 1994, the Supreme Court denied the appeal with the notation it was "concurring in results only." *Id.*  Tenn. S. Ct. R. 4(F)(1) and (3) combine to render such opinions of no precedential value.[4]  If an application for permission to appeal is denied with the notation "concurring in results only," the opinion has "no precedential value." *Id.*  Since *Memphis Publishing I* has no precedential value, the legal conclusion by the trial court that "the construction of the questioned Act" was "determined by the Court of Appeals" in *Memphis Publishing I* was erroneous.

The Department additionally contends the construction of the Act by this court in *Memphis Publishing I* has no bearing on the parties at bar because the ruling served only as the law of the case, the *Memphis Publishing* case, and Texaco was not a party to that case.[5]

---

[3]There are two other appeals with the same name.  The opinion the Chancellor relied on was the first of the three Memphis Publishing opinions.

[4]The Supreme Court further explained:

[W]hen we deny discretionary review, this Court is not necessarily committed to all the views expressed in the opinion of the intermediate appellate court. *Meadows v. State*, 849 S.W.2d 748, 752 (Tenn.1993); *Adams v. State*, 547 S.W.2d 553, 556 (Tenn.1977); *Street v. Calvert*, 541 S.W.2d 576, 587 (Tenn.1976); *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 611, 130 S.W.2d 85, 88 (1939). We discussed in Meadows the practical reasons for this rule.

This Court's use of the denial with concurrence in results only designation has been founded upon similar considerations. For example, simply because of the sheer volume of applications for appeal, this Court does not have the ability to grant review and write an opinion in every case in which it disagrees with some portion of the intermediate appellate court decision. In addition, the problematic portion of the intermediate appellate decision is not always raised as an issue by the parties in their applications for review. Occasionally, the issue is raised, but the record is deficient. On other occasions, the troubling rationale of the intermediate appellate court relates to a well-settled area of the law, so there is no need for another decision of this Court. In all these circumstances our ability to deny review with concurrence in results only precludes publication of the intermediate appellate court decision, *Pairamore v. Pairamore*, 547 S.W.2d 545, 548 (Tenn.1977); *see also* Rule 4.4, Rules of Tenn. Sup. Ct.

*Memphis Publishing Co. v. Tennessee Petroleum Underground Storage Tank Board*, 975 S.W.2d 303, 307 (Tenn. 1998).

[5]The trial court did not expressly find *Memphis Publishing I* to be the law of the case relative to the case at bar; however, the holding in *Memphis Publishing III* was based on the Supreme Court's finding that Memphis Publishing Company had a vested right due to a ruling in *Memphis Publishing I* that constituted the law of the *Memphis Publishing* case.

> The phrase "law of the case" refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case. 5 AM.JUR.2D APPELLATE REVIEW § 605 (1995). In other words, under the law of the case doctrine, an appellate court's decision on an issue of law is binding in later trials and appeals of the same case if the facts on the second trial or appeal are substantially the same as the facts in the first trial or appeal. *Life & Casualty Ins. Co. v. Jett*, 175 Tenn. 295, 299, 133 S.W.2d 997, 998-99 (1939); *Ladd v. Honda Motor Co., Ltd.*, 939 S.W.2d 83, 90 (Tenn. Ct. App. 1996).

*Memphis Publishing Co. v. Tennessee Petroleum Underground Storage Tank Board*, 975 S.W.2d 303, 306 (Tenn. 1998) (hereinafter *Memphis Publishing III*).

The law of the case doctrine is based on the common sense recognition that issues previously litigated and decided by a court ordinarily need not be revisited in that case. *Id.,* 975 S.W.2d at 306 (*citing Ladd*, 939 S.W.2d at 90; *see also* 5 AM.JUR.2D APPELLATE REVIEW § 605 (1995)). "[W]hen an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court. . . ." *Memphis Publishing III,* 975 S.W.2d at 306 (citing 1B JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 0.404[1] (2d ed.1995)). Stated another way, the decision of the appellate court establishes the law of the case, meaning the case appealed.[6] However, the case at bar is not a remand of the *Memphis Publishing* case and Texaco was not a party to that case. Therefore, while the construction of the Act as determined in *Memphis Publishing I* remained the law of that case, it has no applicability to the case at bar.[7]

## SUBSTANTIAL COMPLIANCE

The Department contends Texaco's eligibility, if any,[8] to seek reimbursement of its remediation expenses from the Fund is vitiated by its failure to comply with the Underground Storage Tank Board's regulations governing the reporting of petroleum releases.

---

[6]There are limited circumstances which may justify reconsideration of an issue – the law of the case – decided in a prior appeal of the case: "(1) the evidence offered at a trial . . . after remand was substantially different from the evidence in the initial proceeding; (2) the prior ruling was clearly erroneous and would result in a manifest injustice if allowed to stand; or (3) the prior decision is contrary to a change in the controlling law which has occurred between the first and second appeal. (citations omitted)" *Memphis Publishing III*, 975 S.W.2d at 306.

[7]Though *Memphis Publishing I* has no precedential value, the decision of this court in the first appeal remained controlling as the law of the *Memphis Publishing* case despite the Supreme Court's denial of review with concurrence in results only. *See Memphis Publishing III*, 975 S.W.2d at 307 (holding denial of review with concurrence in results only does not abrogate the law of the case effect of that decision.)

[8]The Department does not concede eligibility. This argument is asserted in the alternative, if Texaco's pre-Act release is eligible for fund reimbursement.

Texaco discovered the release in March of 1991 and reported the release to the Department three months later. Tenn. Comp. R. & Reg., ch. 1200-1-15-.05(1)-(4) requires owners and operators of underground storage tanks to report suspected releases within seventy-two hours. The Rule defines an "eligible" owner of underground storage tanks as "an owner or operator that is in 'substantial compliance' as defined in subparagraph (hh) of this paragraph." Rule 1200-1-15-.09(2)(k). Subparagraph (hh) provides: "'substantial compliance' shall mean that an owner or operator . . . has complied with the requirement of Rule 1200-1-15-.02(1) through Rule 1200-1-15-.07(5)." Rule 1200-1-15-.09(2)(hh).

The authority of the UST Board to limit Fund eligibility through the promulgation of rules was upheld by this court in *Christian v. Tennessee Petroleum Underground Storage Tank Board*, 928 S.W.2d 927 (Tenn. Ct. App. 1995).[9]

> The Tennessee Petroleum Underground Storage Tank Act (Act) authorizes the Board to "promulgate and adopt such rules and regulations in accordance with the provisions of the [UAPA]." T.C.A. § 68-215-107(f). In addition, the Act provides that any person seeking review of an order for correction may file a written petition with the Commissioner, requesting a hearing before the Board. The hearing is to be conducted by the Board in accordance with the UAPA. T.C.A. § 68-215-119(a)(1) and (b).
> . . .
>
> We find that under the foregoing rule, it is within TDEC's discretion to impose a site check requirement to ascertain whether a release has occurred during a period of fund ineligibility. The rule clearly prohibits the application of fund monies for corrective action costs due to a release occurring during the time of fund ineligibility. Without the site check requirement, how else could "a release which occurred during the time of fund ineligibility" be discovered? Further, we do not find the record to suggest that the Board has inconsistently or arbitrarily imposed such requirement.
>
> We conclude that the determination of the Board requiring Christian to undergo a site check to reestablish fund eligibility comports with T.C.A. § 4-5-322(h). The judgment of the trial court upholding the Board's decision is affirmed.

*Christian,* 928 S.W.2d at 930-931.

Texaco did not report the release within seventy-two hours. To the contrary, it waited some three months to report the release. By failing to comply with the seventy-two hour time constraint under Rule 1200-1-15-.05(1)-(4),Texaco was not in substantial compliance. Therefore, it was not

---

[9] See also the companion case of *Christian v. Tennessee Petroleum Underground Storage Tank Board*, 1995 WL 241331 (Tenn. Ct. App. April 26, 1995).

eligible – not an eligible owner – pursuant to Rule 1200-1-15-.09(2)(k).  Thus, Texaco is not eligible for reimbursement from the Fund of the remediation costs at issue.

### JUSTIFIABLE RELIANCE ON THE 1988 ACT

The Department contends Texaco had no vested right before passage of the 1990 amendment to the Act that restricted the Fund to releases occurring after 1988 because Texaco did not incur an obligation or expend funds at a time it could have justifiably relied on the Act.

Memphis Publishing Company was found to have a vested right to claim reimbursement from the fund. *Memphis Publishing I*, 1993 WL 476292 at *7.  The relevant part of the ruling centered on timing.  Significant facts the court considered were when Memphis Publishing Company incurred the remediation expenses, when the Act went into effect, and when the restrictive amendment went into effect. *Id*.  Significantly, the court found that Memphis Publishing Company incurred $800,000 in remediation expenses and applied for reimbursement *before* the amendment. *Id*.

Unlike Memphis Publishing Company, Texaco did not incur remediation expenses prior to the enactment of the restrictive amendment in 1990.  Texaco removed the underground storage tanks in March of 1988. Any release from those tanks therefore occurred before March of 1988.  The Act went into effect after their removal on July 1, 1988.  The Act was amended in 1990 so that the Fund was not available to releases occurring prior to July 1, 1988.  Texaco discovered the release in March of 1991, after the 1990 amendment went into effect.  Moreover, Texaco did not incur remediation expenses until after the restrictive amendment went into effect.

Justifiable reliance relates to the making of an obligation "in reliance upon the law then in effect, with consequences that cannot be justly ignored when that law is overruled."  *Townsend v. Clover Bottom Hospital and School*, 560 S.W.2d 623, 626 (Tenn. 1978); *see also Robertson County v. Browning-Ferris Industries of Tennessee, Inc.*, 799 S.W.2d 662, 667 (Tenn. Ct. App. 1990) (holding a company did not have a "vested right" on the sole basis of its investment).  All of the underground storage tanks were removed and destroyed before the effective date of the Act.  Texaco was on notice of the 1990 amendment before it discovered the release.  Moreover, Texaco was on notice of the amendment before it incurred the remediation expenses.  Therefore, as the Department contends, Texaco did not justifiably rely on the expectation it would be reimbursed from the Fund when it incurred its remediation expenses.  Accordingly, Texaco did not have a vested right when it incurred the remediation expenses in 1991 and thereafter.

## IN CONCLUSION

The judgment of the trial court is reversed and this matter is remanded for entry of judgment consistent with this opinion. Costs of appeal are assessed against Appellee, Texaco Refining and Marketing, Inc.

_____
FRANK G. CLEMENT, JR., JUDGE