William ADAMS et al., Petitioners,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

Feb. 28, 1977.

James H. Cummings, William H. Bryson, Marshall E. Duggin, Woodbury, for petitioner.

R. A. Ashley, Jr., Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, J. Barrett Melton, Jr., Asst. Atty. Gen., Woodbury, for respondent.

## OPINION

HENRY, Justice.

This criminal action presents two questions:

1. Whether the holding of this Court in *Farris v. State*, 535 S.W.2d 608 (Tenn. 1976) operates to invalidate the charge given by the trial judge with respect to parole eligibility, and other matters specified in § 40–2707, T.C.A.

2. Whether the holding of this Court in *Gray v. State*, 538 S.W.2d 391 (Tenn.1976) renders erroneous the action of the trial judge in imposing consecutive sentences.

### I.

Each of the four petitioners was convicted on two counts of armed robbery and sentenced to serve not more than twenty (20) years. The statutory punishment for robbery accomplished by use of a deadly weapon is "imprisonment for life or for any period of time not less than ten (10) years." § 39–3901, T.C.A.

Thus the jury doubled the minimum sentence.

Petitioners stand convicted of the robbery of a female storekeeper in Readyville, in Cannon County. At the same time and place they robbed her male employee by taking money from his wallet.

This was a simple case of armed robbery with no aggravating circumstances, except the mere fact that the use of a deadly weapon is *per se* an aggravating circumstance. The legislature has expressly so recognized by providing a minimum penalty for simple robbery of five (5) years, and by enhancing (doubling) the minimum penalty when accomplished by the use of a deadly weapon.

■ Thus the posture of this case is that the punishment has been enhanced by the legislature; the minimum has been enhanced (doubled) by the jury; and, in addition, the trial judge enhanced (doubled) the sentences by decreeing that they run consecutively. The end result is that each defendant must serve a forty (40) year sentence for simple armed robbery, in a case involving essentially a single criminal episode.[1]

### II.

Petitioners' assignment of error, based upon the *Farris* question, in the Court of Criminal Appeals, charges the trial judge with error in instructing the jury on parole and other considerations required by the last paragraph of § 40–2707, T.C.A., and sections cited therein:

1. Under a long line of Tennessee cases, culminating in *State v. Black*, 524 S.W.2d 913 (Tenn. 1975), these were multiple robberies and will support multiple convictions. (The author of the instant opinion continues to adhere to his dissent in *Black*, but bows to the law of the state as established by the majority opinion). Particularly in point are *Wilkerson v. State*, 211 Tenn. 32, 362 S.W.2d 253 (1962), and *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879 (1967).

because those laws are unconstitutionally vague and overbroad, and such charge could serve no other purpose than to confuse and bewilder the jury in their attempt to set punishment.

The same error is assigned in this Court.[2]

In *Farris*:

(a) Three members of this Court held that § 2 of Chapter 163 of the Public Acts of 1973, which appears as the second paragraph in § 40-2707, T.C.A., was unconstitutional because its body was broader than its caption.

(b) Two of these members held the same act to be void because "impermissibly vague and impossible to apply."

One of these members agreed with holding (a), but disagreed with holding (b). Additionally, he would have held the act unconstitutional as a legislative invasion of the powers of the judiciary in violation of Article II, Sections 1 and 2 of the Constitution of Tennessee.

The remaining two members would have held the act to be free of any constitutional infirmity.

Thus, to the extent that the assignment in this case charges *vagueness*, *Farris* demands its rejection, if we restrict the assignment to that single, precise meaning and afford it no reasonable latitude.

The State correctly insists that the charge given by the trial judge predated the release of the *Farris* opinion.[3] We held, in *Farris*:

This decision will apply to these cases and to all others wherein convictions *have not become final* on the date of the release of this opinion. (Emphasis supplied). 535 S.W.2d at 614.

On petition to rehear, we said:

A careful reading of the phraseology used will clearly indicate that we were primarily concerned that this case not precipitate petitions for post-conviction relief. A "final conviction", as used in the main opinion, simply means those cases where-

in jury verdicts have been returned but the usual appellate review, *vis a vis* post-conviction relief, has been completed.

*Farris* was decided on February 16, 1976 (main opinion). The instant case was argued in the Court of Criminal Appeals on January 5, 1976, and that court handed down its decision on August 4, 1976. Thus the instant case was in the "pipeline" of appellate review and the conviction had not become final. *Farris* is applicable.

However, we further held in *Farris*, that as a condition precedent to its limited retroactivity "appropriate assignments" must have been made.

In the instant case, Judge Russell, joined by Judge Walker, after referring to our requirement that the question be "timely and properly raised", and with respect to the above quoted assignment, held that "nothing in this assignment properly put the trial judge on notice of the defect found by our Supreme Court." Judge Russell also cites textbook law and cases supporting the general proposition that assignments must be as specific and certain as the nature of the error complained of will permit.

Judge Daughtrey, in a separate concurring opinion, stated:

I am of the opinion that the rationale employed by Judge Russell in overruling the appellants' assignment of error based on the *Farris* violation which occurred at the trial of this case is excessively technical and narrow. I would instead endorse the view expressed by Judge Duncan writing to this issue in *Jackson v. State*, 539 S.W.2d 337, (cert. denied July 6, 1976) (Tenn.Crim.App.1976).

Judge Daughtrey concurred with "some reluctance" and stated that she would dissent but for the fact that in *Jackson*, and in an unreported case, Judge Russell reached the same results on the same *Farris* issue and this Court denied certiorari. Because of this she felt that she "must assume that the Supreme Court is satisfied with Judge Russell's position on this question."

---

2. Proper assignment was also made on motion for a new trial.

3. The trial judge correctly charged the law as of the date of the charge.

This assumption overlooks two significant circumstances and considerations.

First, as pointed out by former Chief Justice Grafton Green, in *Bryan v. Aetna Life Ins. Co.*, 174 Tenn. 602, 130 S.W.2d 85 (1939):

We have repeatedly pointed out that a mere denial by this court of a writ of *certiorari* to the Court of Appeals does not commit us to all the views expressed in a particular opinion. *We are primarily concerned on such application with the result reached.* (Emphasis supplied). 174 Tenn. at 611, 130 S.W.2d at 88.

We reaffirm Justice Green's holding.

Secondly, on petition to rehear in *Farris*, we held unanimously[4] that

the fact that a trial judge, prior to the release of our opinion, may have charged the jury on parole considerations does *not necessarily mean that the error is reversible* or that we will follow the *Farris* procedure. (Emphasis supplied). 535 S.W.2d at 622.

Since *Farris* this Court, on certiorari consideration, has consistently considered each case on an *ad hoc* basis. When, in our opinion, the *Farris* charge affected the length of the sentence we have taken corrective action; when we have felt that it had no effect we have rejected the petition for certiorari. We point out that certiorari is not a writ of right, but of discretion. It is to be borne in mind that basically *Farris* is prospective in application,[5] but as to those cases wherein the conviction has not become final and where appropriate assignments have been made, the *Farris* rule is applicable.

In *Jackson v. State, supra,* the defendant was convicted of a "vicious killing of an innocent robbery victim", according to the majority, and "a brutal murder", according to the concurring opinion. We agreed, and denied the writ, or phrasing it in accordance with Justice Green's language, we were primarily concerned with the result reached.

In *Jackson*, the petitioner asserted the unconstitutionality of § 40–2707, T.C.A., contending that it violated the separation of powers clause of the Constitution of Tennessee. (Art. II, Sections 1 & 2).

The *Jackson* court overruled this assignment on the basis that it was not sufficient to activate the *Farris* rule. In so doing, the Court analogized our disposition of the assignment of Farris himself with the Jackson assignment. This analogy is faulty in its basic premise.

*Farris* assigned as error:

The trial court erred in instructing the jury regarding the doubling of the minimum punishment, said law which authorizes such a change (sic) is unconstitutional. 535 S.W.2d at 622.

As pointed out on petition to rehear in *Farris*, this assignment was directed solely at the first paragraph of § 40–2707, T.C.A., which was not changed one iota by *Farris* and remains intact. In other words, it did not raise what has come to be known as a "Farris issue."

Further reference to *Farris* will reveal that we did consider and grant relief to a co-defendant in that case, Roosevelt Lewis, whose assigned error on motion for a new trial asserted the unconstitutionality of § 40–2707, T.C.A., on the basis of the charge being (1) confusing to the jury, (2) an invasion of the province of the jury and (3) conferring excessive power upon the jury.

The Lewis argument that the caption was overbroad was first made in a consolidated supplemental brief filed in this Court, wherein an appropriate assignment was made for the first time.

Yet we granted Lewis relief, and but for the gravity of the offense and our determination that the *Farris* charge did not affect the result of the trial, we would have granted relief in *Jackson*. Then and now we approve the results reached in *Jackson*, but not the reasoning.

---

4. To the extent of the opinion on petition to rehear.

5. A *Farris* charge given after the date of the release of the main opinion is reversible error. 535 S.W.2d at 622.

In *Jackson*, Judge Duncan, in a concurring opinion, on petition to rehear, stated:

> To me, the instant case is similar to the *Farris* companion case of *Roosevelt Lewis v. State*, where the Supreme Court recognized Lewis' complaint, even though he had not raised the "improper caption" complaint in the trial court. In Lewis' motion for a new trial, he complained of the unconstitutionality of T.C.A. § 40–2707, but as stated, he did not allege the "improper caption" complaint. A similar situation exists in Jackson's motion for a new trial. Also, like the present case, Lewis first began to insist on this additional ground for the Act's unconstitutionality when his case came to our Court. Further, Lewis listed this additional ground when his case was before the Supreme Court. Since Lewis had raised the unconstitutional question in the trial court, the Supreme Court did not decline to consider his ground because he had predicated his complaint there on an improper ground.
>
> Thus, I am of the opinion that the defendant's complaint has been sufficiently raised, . . ." 539 S.W.2d at 339.

Judge Duncan's concurrence in the denial of the petition to rehear, pursuant to the *ad hoc* language of *Farris* and on the basis of the commission of a "brutal murder" by the petitioner, was soundly based.

As the matter now stands we confront a conflict among four of our most able appellate judges and the grant of the writ in this case was necessary to reconcile this conflict.

■ We hold that the *Farris* rule is applicable to this case since the conviction had not become final and the assignment of error made in the trial court, the Court of Criminal Appeals and in this Court was sufficient to enable petitioner to invoke the rule. The acceptance of the *Lewis* assignment in *Farris* demands this approach. Moreover, we think it to be in the interest of justice.

■ We recognize that our own rules, reflective of the case law of the state, require specificity in assignments. They also

demand equitable and practical interpretation. Here the petition specifically alleged the unconstitutionality of the act setting forth certain specific grounds for its unconstitutionality, but not the precise ground upon which *Farris* was decided. Most assuredly, in a criminal case, if a defendant merely asserts the unconstitutionality of an act, he would not be repelled because he did not set forth reasons. We are not willing to penalize a criminal defendant for an incomplete and/or inaccurate assignment. Especially would we not do this in a case wherein this very Court has been sharply divided, with at least four different views, all supportable by recognized legal principles, but only one of which was able to command even a bare majority.

Section 40–3409, T.C.A. specifically provides:

> No assignment of error or joinder is necessary in criminal cases taken to the Supreme Court, but the court *shall* render such judgment on the record as the law demands. (Emphasis supplied).

This statute has been on our books for over a century. It was obviously passed for the benefit of criminal defendants, since it was aged when the Court of Criminal Appeals came into existence and, with rare exception, only the defendant had a right of appeal to the Supreme Court.

Following this statute, this Court has declared that it is bound to consider any errors in the record, whether there has been an assignment or not. *James v. State*, 215 Tenn. 221, 385 S.W.2d 86 (1964).

Thus the mandate of this statute affords an additional reason for our action.

Pursuant to this assignment, and in accordance with the procedure outlined, *infra*, this case will be remanded.

## III.

The second issue, relating to the action of the trial judge in ordering the sentences to run consecutively, is substantially less troublesome. Its resolution does not require a determination as to the sufficiency of the

assignment. *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), provides the answer.

In *Gray*, this Court, speaking through Mr. Justice Fones, established criteria to be utilized by trial judges in the use of the consecutive sentencing procedure.

We held, *inter alia*, that "a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant." 538 S.W.2d at 393.

Thereafter we held that this punishment should be reserved for (1) the persistent offender, (2) the professional criminal, (3) the multiple offender, (4) the dangerously mentally retarded and (5) the dangerous offender.

We defined the "persistent offender" as "one who has previously been convicted of two felonies or of one felony and two misdemeanors committed at different times when he was over eighteen (18) years of age." 538 S.W.2d at 393.

The record in this case shows by affirmative responses given by petitioner Griffin, that he had been convicted in Federal Court, in March 1974, of armed robbery and the same year was convicted for the same offense in the Criminal Court at Franklin. He was, therefore, a "persistent offender" and there can be no legitimate charge that the trial judge was in error in imposing a consecutive sentence upon him. As to the remaining petitioners the record is insufficient to support a meaningful review.

In *Gray* we said:

A defendant may be classified as a dangerous offender if the crimes for which he is convicted indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high. This does not mean that all defendants convicted of several counts of a dangerous offense, such as armed robbery, should be consecutively sentenced. Even though armed robbery is a dangerous offense, there are increased penalties for that crime. The decision to impose consecutive sentences when crimes inherently dangerous are involved should be based upon the presence of aggravating circumstances and not merely on the fact that two or more dangerous crimes were committed. However, this does not preclude the trial court from imposing consecutive sentencing for the commission of dangerous offenses where no aggravating circumstances are present if evidence indicates that the defendant should be sentenced under one of the other classifications. 538 S.W.2d at 393–94.

We do not deem it necessary to develop further the issues raised by this assignment.

## IV.

We reduce the sentences of all petitioners to ten (10) years, and as thus reduced, their convictions are affirmed. These reductions are subject to the approval and consent of the State. If the State does not consent, these cases will be reversed and remanded for a new trial, under the guidelines handed down in *Huffman v. State*, 200 Tenn. 487, 292 S.W.2d 738 (1956). If the State consents to the reduction of the sentences, the case will be remanded for the sole purpose of enabling the trial judge to consider whether to impose consecutive sentences on one or more of the petitioners, under the criteria set forth in *Gray, supra*. In order to facilitate orderly and effective appellate review, the trial judge should incorporate in his rulings the reasons prompting him to impose consecutive sentences.

We affirm all convictions, reduce the sentences, conditionally remand on the *Farris* issue and remand on the *Gray* issue.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concurring.