IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
Heard at Knoxville
January 4, 2005 Session

## STATE OF TENNESSEE v. EDWIN GOMEZ and JONATHAN S. LONDONO

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Davidson County**
**No. 2001-A-280      Cheryl Blackburn, Judge**

---

**No. M2002-01209-SC-R11-CD - Filed April 15, 2005**

---

E. RILEY ANDERSON, J., concurring in part and dissenting in part.

I agree that neither defendant is entitled to relief under Crawford v. Washington, 541 U.S. 36 (2004) and concur in that part of the Court's opinion. I disagree, however, with the majority's discussion and application of Blakely v. Washington, 124 S. Ct. 2531 (2004), to Tennessee's Criminal Sentencing Reform Act of 1989 ("Reform Act"). The majority concludes that the defendants' sentences, imposed under Tennessee Code Annotated section 40-35-210 (2003), do not violate their Sixth Amendment right to trial by jury. See United States v. Booker, 125 S. Ct. 738, 750 (2005); Blakely, 124 S. Ct. at 2537. I disagree.

In my view, the presumptive sentences set forth in Tennessee Code Annotated section 40-35-210 established a fixed point for the defendants' sentences such that the upward departure, based solely on findings made by the trial judge, was imposed in violation of Blakely and therefore violated the defendants' Sixth Amendment right to trial by jury. I also disagree with the majority's conclusions that Blakely did not announce a new rule and that we should strictly apply issue preservation principles when determining whether a defendant has preserved a Blakely claim. I would therefore vacate the defendants' sentences and remand to the trial court for resentencing in light of Blakely and Booker.

### I. Constitutionality of the Tennessee Reform Act

I begin my analysis by examining the three recent United States Supreme Court cases which drastically altered the legal landscape by determining that, when a trial judge imposes a sentence in excess of the maximum authorized by the jury's verdict alone, the sentence violates the Sixth Amendment right to trial by jury.

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. Although the court has since clarified the meaning of "the prescribed statutory maximum," it has not deviated from the core principle set forth in Apprendi: where the legislature has defined a crime and set a punishment for that crime, a trial judge may not impose a sentence exceeding the maximum punishment authorized by the jury's verdict alone. Id.; see also Blakely, 124 S. Ct. at 2538; Booker, 125 S. Ct. at 756. As I will explain, Apprendi's core holding did not change with Booker and invalidates the defendants' sentences.

A.

In Apprendi, the defendant pled guilty to a crime statutorily punishable by up to ten years in prison. The trial judge, however, made additional findings and sentenced the defendant to twelve years – two years outside the maximum statutory range. 530 U.S. at 469-71. Apprendi held that this departure beyond the statutory maximum, based on facts not found by a jury, was unconstitutional. Id. at 490.

The court reasoned that the Sixth Amendment jury trial guarantee, coupled with the Due Process protections of the Fourteenth Amendment, "indisputably entitle[s] a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" Id. at 477 (citation omitted). The court explained that at common law, it was the province of the jury to determine whether a defendant had committed all of the elements charged, and it was the role of the judge merely to impose sentence based on the jury's findings. Id. at 478-79. The court extracted from this history the principles that any fact necessary to support a defendant's punishment constitutes an element of the crime and that all elements must be charged in the indictment and found by a jury beyond a reasonable doubt. See id. at 490.

The court explained that the New Jersey sentencing scheme at issue in Apprendi, whereby the judge could enhance sentences by finding additional elements not found by the jury, was incompatible with the Sixth Amendment:

> The historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties provided highlight the novelty of a legislative scheme that removes the jury from the determination of a fact that, if found, exposes the criminal defendant to a penalty *exceeding* the maximum he would receive if punished according to the facts reflected in the jury verdict alone.

Apprendi, 530 U.S. at 482-83.

Although Apprendi's limitation on judicial fact-finding called into question the ability of judges ever to make findings relevant to sentencing, the court seemed to limit Apprendi only two years later, in Harris v. United States, 536 U.S. 545 (2002). In Harris, five members of the court upheld a federal statute permitting a judge to impose an increased *minimum* sentence based on facts not found by the jury. Id. at 568. Although the court split four votes to four as to whether Apprendi permitted this result, the majority upheld the sentence. See id. The result in Harris, then, indicated that Apprendi only applied when a judge found facts used to sentence a defendant above the range for the crime of which he had been convicted. The open question, however, was what constituted the applicable "range."

The two cases that very recently addressed that open question were Blakely and Booker. In discussing Blakely and Booker, it is critical to understand the sentencing systems that were at issue in those two cases. Booker dealt with the Federal Sentencing Guidelines. See 125 S. Ct. at 746. Blakely dealt with Washington state's Reform Act. See 124 S. Ct. at 2535. Those sentencing systems operated as follows. After a jury convicted a defendant (or a defendant entered a guilty plea) as to a particular crime, the sentencing judge was not free to impose a sentence anywhere within the statutory range. Rather, under the federal Guidelines, a judge was required to start at a "base range" determined by the jury's verdict. See U.S. Sentencing Guidelines Manual § 1B1.1 (2004). The Washington Reform Act similarly set forth a narrow "standard range" corresponding to the jury's verdict. See Wash. Rev. Code Ch. 9.94A.530 (2004). After determining the starting point based upon the jury's verdict, both sentencing systems then required a judge to consider a host of factors in addition to the jury's verdict to determine whether a defendant should receive an enhanced sentence. Under the federal Guidelines, judicial findings of enhancement factors required a judge to move the defendant up from the base range to higher ranges. This system was mandatory, so that its effect was to overlay the full statutory range with a series of mandatory "mini-ranges." Under the Washington system, however, a judge was permitted, but not required, to enhance a sentence beyond the standard range if he or she determined that aggravating factors justified a departure. The result was that both the federal Guidelines and the Washington Reform Act specified a "base" or "standard" range as the starting point based upon the jury's verdict. Any upward departures from that starting point could only be made upon a judge's finding of fact. See Blakely, 124 S. Ct. at 2535; Booker, 125 S. Ct. at 750-51.

Prior to Blakely and in light of Harris, Apprendi was generally understood only to prohibit a judge from departing beyond the upper limit of a statutorily-defined range based on facts not found by a jury. Apprendi did not appear to affect sentencing schemes where a judge made findings that moved a defendant out of the base range or from one "mini-range" to another, as long as the sentence did not go outside the statutory range. See Simpson v. United States, 376 F.3d 679, 681 (7th Cir. 2004) (documenting that "before Blakely was decided, every federal court of appeals had held that Apprendi did not apply to guideline calculations made within the statutory maximum"); see also, e.g., United States v. Helton, 349 F.3d 295, 299 (6th Cir. 2003) ("[O]nce the jury has determined guilt, the district court may sentence the defendant to the statutory minimum, the statutory maximum, or anything in between, based on its (proper) application of the Guidelines and based on its (permissible) preponderance-of-the-evidence findings under the Guidelines.").

The Blakely decision, released in June 2004, held that – contrary to the widely-held interpretation of Apprendi – because the base range or standard range created by a sentencing scheme constitutes the "statutory maximum" under Apprendi, "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." Blakely, 124 S. Ct. at 2537. In other words, *any* fact (other than facts admitted by a defendant or a prior conviction) that increases a defendant's sentence beyond the prescribed base or standard range for that particular offense must be found by a jury.

Blakely thus radically constricted the ability of judges to go outside the narrow basic range of punishment specified by the legislature.[1] The effect of Blakely was to reduce the applicable range to the base range or standard range set forth in a sentencing scheme, as opposed to the full range of years set forth in the criminal statutes. However, although it rendered a narrow definition of what constitutes the "maximum range," the court left intact a judge's ability to exercise discretion in sentencing within that greatly-reduced range. Indeed, in Apprendi, the court had stated that judges are free to exercise discretion in sentencing "in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence *within statutory limits* in the individual case." Apprendi, 530 U.S. at 481 (emphases in original) (citation omitted).

This year's Booker decision reaffirmed that this language in Apprendi was still good law after Blakely, clarifying that "when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant." Booker, 125 S. Ct. at 750. In other words, as long as a judge stays within the *appropriate range*, the decision may be based on facts not found by a jury. The court's solution was to excise the portion of the Federal Sentencing Guidelines making them binding on judges. Id. at 756-57. In effect, then, by making the Guidelines advisory, the court restored the full statutory range as the applicable range of punishment. With the elimination of the mandatory base range and mini-ranges created by the Guidelines, a jury's verdict will support punishment anywhere within the range set forth in the statute, and a trial judge will be free to exercise his or her discretion to impose a sentence anywhere within that range, based on whatever facts "the judge deems relevant." Booker, 125 S. Ct. at 750.

Having explained the holdings of Apprendi, Blakely, and Booker, I now discuss why, in my view, Booker does not salvage the constitutionality of the Tennessee Reform Act.

---

[1] Washington's Sentencing Reform Act is embodied in the state code. See Wash. Rev. Code Ch. 9.94A. Although not embodied in the United States Code, because the Federal Sentencing Guidelines "are binding on judges," the court has "consistently held that the Guidelines have the force and effect of laws." Booker, 125 S. Ct. at 750 (citations omitted); see also id. at 752.

B.

Relying on <u>Booker</u>, the majority concludes that Tennessee's Reform Act provides the sort of indeterminate, discretionary range within which the Supreme Court has held that a judge may exercise discretion. The majority concludes that Tennessee Code Annotated section 40-35-210 "merely requires judges to consider enhancement factors . . . but [it] does not *mandate* an increased sentence upon a judge's finding of an enhancement factor."

I agree with the majority that, on its face, <u>Booker</u> made the constitutionality of the Tennessee Reform Act a closer question than it was considering <u>Blakely</u> alone. In applying <u>Booker</u> to the statutory ranges set forth in the Tennessee Reform Act, however, the majority ignores the fact that the Reform Act sets a "presumptive sentence" for each class of felony within each range. Tenn. Code Ann. § 40-35-210(c) ("The presumptive sentence for a Class B, C, D and E felony shall be the minimum sentence in the range if there are no enhancement or mitigating factors. The presumptive sentence for a Class A felony shall be the midpoint of the range if there are no enhancement or mitigating factors."). The presumptive sentence is comparable to the base range of the federal Guidelines and the standard range of the Washington Reform Act.

As we have often observed, Tennessee's "presumptive sentences" are not merely advisory. Rather, "[t]he minimum sentence is the presumptive sentence. The sentence imposed cannot exceed the minimum sentence in the range unless the State proves enhancement factors." <u>State v. Jones</u>, 883 S.W.2d 597, 601 (Tenn. 1994) (citation omitted);[2] see also <u>State v. Gutierrez</u>, 5 S.W.3d 641, 644 (Tenn. 1999); <u>State v. Carico</u>, 968 S.W.2d 280, 288 (Tenn. 1998). In other words, "[i]f there are no enhancement or mitigating factors, then the court *must* impose the minimum sentence within the appropriate range." Sentencing Comm'n Comments to Tenn. Code Ann. § 40-35-210 (emphasis added).

Thus, the effect of the mandatory presumptive sentence is to create a determinate sentence, not a range. In this respect, the Tennessee Reform Act is even more restrictive than the Washington sentencing scheme or the Federal Sentencing Guidelines, because rather than creating a base or standard range, the Reform Act authorizes only a single sentence based on the jury's verdict – the minimum sentence, in the case of Class B, C, D, or E felonies, and the midpoint of the range in the case of Class A felonies. Under Tennessee's Reform Act, the jury verdict alone does not allow "a trial judge [to] exercise[] his discretion to select a specific sentence within a defined range." <u>Booker</u>, 125 S. Ct. at 750. The presumptive sentence fixes a *determinate* point, not a range, and the trial judge has no discretion to deviate from this determinate point unless he or she makes additional findings that enhancement factors are present.

_____

[2] At the time we decided <u>Jones</u>, the presumptive sentence for all felonies was the minimum within the range. The statute has since been amended to make the presumptive sentence for Class A felonies the midpoint of the range rather than the minimum. 1995 Pub.Acts. c. 493, § 1, eff. July 1, 1995; 1998 Pub.Acts, c. 914, § 1, eff. May 7, 1998.

Because enhancement factors must be factors separate from the elements of the crime, see Tenn. Code Ann. § 40-35-114, they are by definition facts not found by the jury and are therefore invalid under Apprendi and Blakely, even as clarified in Booker. The only exception, of course, is prior convictions, which need not be found by the jury in order to be used as enhancement factors. Apprendi, 530 U.S. at 490. However, because the Reform Act does not require a judge to apportion a sentence enhancement among the various enhancement factors, it is often impossible to parse the degree to which an enhanced sentence is based on prior convictions and the degree to which it is based on impermissible enhancement factors.

My view of the United States Supreme Court's reasoning in Booker differs from the majority's. The majority reads Booker to permit any range-based sentencing scheme as long as the scheme does not *require* a judge to increase a defendant's sentence based upon a finding of an enhancement factor. Because Tennessee's Reform Act does not *mandate*, but merely permits, an increased sentence based upon a judge's finding of an enhancement factor, the majority concludes that it is constitutional. However, the "mandatory" facet of the Federal Sentencing Guidelines to which the court in Booker objected was not the fact that the Guidelines mandated upward departures based upon particular judicial findings of fact. Rather, it was the fact that *no* departures could be justified based on the jury verdict alone, because the jury verdict alone authorized only the base range sentence. "Whether the judicially determined facts *require* a sentence or merely *allow* it, the verdict alone does not authorize the sentence." Blakely, 124 S. Ct. at 2538 n.8. The solution adopted by the Booker majority, excision of the provisions making the federal Guidelines binding upon judges, eliminated the mandatory base range sentence, restoring a judge's discretion to impose a sentence anywhere within the entire statutory range. See 125 S. Ct. at 756-57.

The Washington state scheme struck down in Blakely was effectively the same as Tennessee's Reform Act. It mandated a "standard range" based upon the jury's verdict and then permitted, *but did not require*, a judge to enhance the defendant's sentence in response to judicially-determined enhancement factors. Critically, Booker did not change Blakely's holding that the Washington state scheme was unconstitutional. Indeed, Booker noted that "there is no distinction of constitutional significance between the Federal Sentencing Guidelines and the Washington procedures at issue" in Blakely. Booker, 125 S. Ct. at 749. Again, then, under Apprendi, Blakely, and Booker, the Sixth Amendment is implicated not when judicial discretion is constrained, but when a judge departs beyond the upper limit of the sentence authorized by the jury's verdict alone. Because Tennessee's Reform Act is functionally identical to the Washington Reform Act in that it constricts the statutory range from a range of years to a mandatory, determinate point, any sentences imposed beyond that point based upon facts not found by a jury are unconstitutional. Were the legislature simply to eliminate the presumptive sentence, in my view, Tennessee's Reform Act would be constitutional.[3]

---

[3] This is the solution proposed by the Governor's Task Force on the Use of Enhancement Factors in Criminal Sentencing.

In sum, the Tennessee Reform Act does not provide the sort of open, indeterminate sentencing range envisioned in Booker. Rather, as this Court has consistently interpreted it, the Reform Act sets forth a presumptive sentence and constrains a judge's discretion in departing from that sentence. Therefore, the Reform Act does not pass constitutional muster under Apprendi, Blakely, and Booker because it permits a trial judge to impose a sentence in excess of the maximum sentence authorized by the jury verdict alone.[4]

The majority's conclusion that the Reform Act is a discretionary sentencing procedure with "merely advisory" statutory enhancement factors may come as a surprise not only to both parties in this case but also to trial and appellate judges throughout the state. For fifteen years, we have emphasized that the purposes of the Reform Act included consistency and uniformity in sentencing. Tenn. Code Ann. §§ 40-35-102, -103. Trial courts have been admonished to adhere to the procedures of the Reform Act and to make detailed findings of fact whenever applying enhancement factors to enhance a sentence. The majority's conclusion that the application of these principles has been merely advisory and fully discretionary throughout the entire sentencing range is inconsistent with both the Reform Act and this Court's interpretation of it over the past fifteen years.

In the case before us, the record reveals that the defendants' sentences were enhanced by fifteen years, or 44%, based on facts not found by a jury. The sentencing judge relied on a number of factors in enhancing both defendants' sentences, to wit: the trial judge found that both defendants had prior criminal convictions; that both were leaders in the commission of the offense; that, as to three of the four counts, the amount of property taken was great; and that, as to Count Two, the defendants possessed or employed a firearm. Tellingly, the trial judge acknowledged that her decision that the defendants were leaders in the offense was not consistent with the jury's verdict. She stated, however, that "we must keep in mind that enhancing factors must only be proven by preponderance of the evidence, not beyond a reasonable doubt, so that even though the jury's verdict might have been different," she was electing to apply the enhancement factor. This discrepancy between a jury's findings and a judge's findings is precisely what Apprendi and Blakely held that the Sixth Amendment is intended to guard against.

The trial judge noted that she was giving great weight to the prior criminal convictions, but did not make sufficient findings to reveal the portion of the enhancement attributable to the prior convictions. The judge applied the enhancement factors to impose the maximum sentence for each count and ordered that the sentences run consecutively, for an effective total sentence of forty-nine years. By applying the Reform Act to sentence the defendants to a total of fifteen years more than

---

[4] Moreover, Booker explained that in a true range scheme, a judge may consider *any* factors he or she deems relevant in assessing a sentence. However, under the Tennessee Reform Act, the judge's discretion is restricted in a number of ways. First, "[t]he State has the burden of proving any enhancement factors." Gutierrez, 5 S.W.3d at 644. Additionally, "only those enhancement factors specifically authorized by statute may be used to increase a sentence." Jones, 883 S.W.2d at 601. Finally, the propriety of applying a particular enhancement factor to a particular case is subject to appellate review. See, e.g., Gutierrez, 5 S.W.3d at 645 (examining sentence enhancement based on abuse of a position of private trust).

the maximum sentences authorized by the jury's verdict, the trial judge violated the defendants' Sixth Amendment rights. Because, as I explain below, I would hold that Blakely announced a new rule and that the defendants timely raised Blakely claims such that they are entitled to review, I would vacate their sentences and remand for resentencing.

## II.  New Rule

In Griffith v. Kentucky, 479 U.S. 314, 328 (1987), the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final . . . ."  In my view, Blakely announced a "new rule" within the meaning of Griffith.

Following Apprendi, it was widely understood that the relevant "statutory maximum" was the full statutory range of punishment available for a particular offense. See, e.g., Simpson, 376 F.3d at 681.  As explained above, Blakely fundamentally altered this widely-held understanding.

Apprendi was decided by a 5-4 split, with the Justices filing five separate opinions.  The court itself seemed to struggle with the precise scope of Apprendi, as is evidenced by the four separate opinions filed in Harris only two years later and the lack of a controlling rationale in Harris. See 536 U.S. 545.  Apprendi's scope and ramifications, therefore, were certainly open to debate.

In constricting the definition of statutory maximum, "Blakely radically reshaped our understanding of a critical element of criminal procedure."  Smylie v. State, 823 N.E.2d 679, 687 (Ind. 2005).  Several courts have recognized that this "radical[] reshap[ing]" of Apprendi constituted a new rule. See, e.g., Simpson, 376 F.3d at 681; United States v. Price, 400 F.3d. 844, 847 (10th Cir. 2005); Smylie, 823 N.E.2d at 687.  Our Tennessee Court of Criminal Appeals has repeatedly so held. See, e.g., State v. Walters, 2004 WL 2726034 at *20 (Tenn. Crim. App. Nov. 30, 2004).  Most significant to defendants' appeal, this Court failed to predict the extension of Apprendi wrought in Blakely.  See Graham v. State, 90 S.W.3d 687, 691-92 (Tenn. 2002) (rejecting Apprendi-based challenge to the Reform Act).  Certainly, then, for purposes of Tennessee law, Blakely announced a new rule.

Additionally, in this year's decision applying Blakely to the Federal Sentencing Guidelines, the Supreme Court itself stated that it was announcing a new rule. United States v. Booker, 125 S. Ct. at 769 (commenting that holding would apply to all federal cases on direct review).  If Booker, which was merely an application of Blakely, stated a new rule, then surely Blakely did, too.

I agree with the majority that when the United States Supreme Court announces a new constitutional rule, that rule is retroactively applicable to all cases on direct review. Griffith, 479 U.S. at 328; see also United States v. Johnson, 457 U.S. 537, 562 (1982).  For this reason, I concur

in Part II of the Court's opinion, concluding that <u>Crawford</u> announced a new rule but that the defendants are limited to plain error review because they failed to preserve the issue below.[5]

I part ways with the majority, however, when it reaches its subsequent analysis. After the majority concludes that <u>Blakely</u> did not announce a new rule, it concludes that defendants are nevertheless entitled to plain error review. Moreover, the majority suggests that defendants who preserved an issue below – even if that issue is not the subject of a new constitutional rule – are still entitled to plenary appellate review. <u>See</u> maj. op. at ___ ("[B]ecause the defendants failed to raise and preserve for review their Sixth Amendment challenge, the defendants are limited to seeking relief via plain error review.").[6] Under the majority's reasoning, the determination of whether or not a decision constitutes a "new rule" is irrelevant to the issue of retroactivity. Indeed, all decisions are now retroactive, whether they constitute a new constitutional rule or not. The only question is whether or not the defendant properly preserved the issue, entitling him to plenary review, or whether the defendant failed to preserve the issue, entitling him only to plain error review. As a result, the Court has created a framework under which two starkly different scenarios, one, the new constitutional rule in <u>Crawford</u> and the other, a not-new constitutional rule in <u>Blakely</u>, are treated identically. Because the majority has therefore embarked on a new course that renders traditional analysis of "retroactivity" obsolete, I dissent from Part III of the majority opinion in its entirety.

## III. <u>Preservation of Issue for Review</u>

The majority concludes that courts need only apply new rules to cases on direct review (so-called "pipeline" cases) if the issue to which the new rule pertains was properly preserved for review. Although I agree with the proposition that plenary retroactive application of <u>Blakely</u> should be tempered by application of our prudential issue preservation rules, I do not agree with the majority's restrictive view of what is necessary to preserve a <u>Blakely</u> claim.

The U.S. Supreme Court has indicated that application of prudential review doctrines such as waiver and forfeiture will not run afoul of <u>Griffith</u>. <u>Booker</u>, 125 S. Ct. at 769. I do not believe the preservation requirement should be applied so stringently, however, as to require clairvoyance on the part of defendants or their attorneys. As explained above, the decision in <u>Blakely</u> was a widely-unforseen consequence of <u>Apprendi</u>. In my view, then, "requiring a defendant or counsel to have prognosticated the outcome of <u>Blakely</u> . . . would be unjust." <u>Smylie</u>, 823 N.E.2d at 689; <u>see</u>

---

[5] The majority suggests that it does not understand my concurrence in its <u>Crawford</u> analysis in light of my dissent from its <u>Blakely</u> analysis. The majority, however, errs in treating cases that do not announce "new rules" the *same as cases* that do announce "new rules." Moreover, unlike the majority, I would hold that the <u>Blakely</u> issue has been sufficiently preserved for the reasons explained in part III of my dissent. For these reasons, I cannot agree with the majority's application of plain error review to the defendants' <u>Blakely</u> claims.

[6] The case the majority cites for the proposition that plain error is determined with reference to the state of the law at the time of appeal, <u>Johnson v. United States</u>, 520 U.S. 461, 468 (1997), was a case applying a new rule retroactively and so does not support the majority's position. Similarly, the majority's view that <u>Johnson</u> supports its conclusion that all decisions apply retroactively, whether or not based on a new constitutional rule, is misplaced; as I have noted, <u>Johnson</u> was based on a new constitutional rule.

also United States v. Henningsen, 387 F.3d 585, 591 (7th Cir. 2004) (adopting lenient review standard with regard to Blakely issues).

Although the majority asserts that "this Court has regularly limited retroactive application of new rules to only those cases pending on direct review in which the issue has been timely raised and properly preserved," majority op. at n.9, a closer examination of the only two criminal cases cited by the majority reveals that our past practice has been to take a flexible approach to issue preservation requirements. In Farris v. State, 535 S.W.2d 608, 614 (Tenn. 1976), a 3-2 majority of this Court invalidated a statute requiring that jury charges include instruction on the intricacies of parole eligibility after concluding that the body of the statute was broader than its caption. One year later, in Adams v. State, 547 S.W.2d 553, 557 (Tenn. 1977), the Court addressed application of the Farris holding to petitioners on direct review. Although the defendants in Adams appealed their sentences on the basis that the challenged statute was unconstitutionally vague – a rationale not supported by the majority decision in Farris – this Court concluded that review had been preserved:

> We recognize that our own rules, reflective of the case law of the state, require specificity in assignments. They also demand equitable and practical interpretation. . . . We are not willing to penalize a criminal defendant for an incomplete and/or inaccurate assignment. Especially would we not do this in a case wherein this very Court has been sharply divided, with at least four different views, all supportable by recognized legal principles, but only one of which was able to command even a bare majority.

Adams, 547 S.W.2d at 557.

Moreover, a hard-line application of preservation principles to Blakely claims may have the unintended consequences of burdening defense counsel with raising numerous speculative claims and burdening trial and appellate courts with disposing of them. As the Indiana Supreme Court recently observed in Smylie,

> A very tough Blakely preservation rule would prompt practitioners to fill trial time and appellate briefs with all imaginable contentions, contrary to the general advice that it is good practice to focus on the most viable issues. It would also drastically alter the burden imposed on counsel as to what constitutes effective assistance to their clients. . . . An attorney is not required to anticipate changes in the law and object accordingly in order to be considered effective. . . . [A] trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a Blakely claim before Blakely was decided. Consequently, we do not deem the failure to raise a Sixth Amendment objection to the trial court as it proceeded through

> sentencing to constitute forfeiture of a <u>Blakely</u> issue for purposes of
> appellate review.

823 N.E.2d at 690 (quotations and citations omitted).

As another practical point, I note that we have implicitly held that <u>Blakely</u>/<u>Apprendi</u> claims are cognizable on post-conviction review pursuant to Tennessee Code Annotated section 40-30-117 (2003). <u>See</u> <u>Graham</u>, 90 S.W.3d at 692 (considering whether enhancement of petitioner's sentence based on factors not found by a jury, but still within the statutory range, violated <u>Apprendi</u>). Because there is no issue preservation requirement for post-conviction claims brought under section 40-30-117, a petitioner whose sentence becomes final within one year of the <u>Blakely</u> decision will have the opportunity to raise a <u>Blakely</u> claim on collateral review, whereas petitioners still on direct review who have not preserved the issue will not be able to obtain plenary review of a <u>Blakely</u> claim.[7]

Because I believe that both equity and practical considerations weigh in favor of a more lenient standard, I would require only that a petitioner have made some objection to his sentence at trial and have timely raised the <u>Blakely</u> claim on appeal. <u>See</u> <u>Smiley</u>, 823 N.E.2d at 690 ("[I]t does not ask too much that a criminal defendant have contested his or her sentence on appeal, even if the <u>Blakely</u> element of that contest is added later . . . ."). In my view, such a rule would strike a sound balance between fairness and equity on the one hand, and gatekeeping and consistency concerns on the other.

## IV. Application to Defendants' Sentences

The record reveals that, during the sentencing hearing, both defendants argued against application of the enhancement factors and against consecutive sentencing. The judge enhanced the defendants' sentences using four different enhancement factors. The only factor that may be constitutionally applied without being found by a jury is the enhancement for prior convictions. The judge indicated that she was "going to give great weight" to the enhancement factor based on prior criminal conduct, but did not indicate the degree to which the increased sentences were based on that enhancement factor.

Both defendants argued to the Court of Criminal Appeals that their sentences were excessive and the Court of Criminal Appeals decided those claims on the merits. Although the defendants did

---

[7] The majority argues that, based on cases decided in the United States Supreme Court, <u>Apprendi</u> and <u>Blakely</u> will not apply retroactively to cases on collateral review. While I agree that the U.S. Supreme Court has so held, the fact remains that we considered such an argument on the merits in <u>Graham</u>. Although the majority states I have cited no authority for my position, the majority does not address <u>Graham</u>. Moreover, as we have often observed, this Court is free to interpret our State's statutes and Constitution as affording greater protection than does federal law. <u>See, e.g.</u>, <u>State v. Harris</u>, 919 S.W.2d 323, 333 (Tenn. 1993) ("We, as the Supreme Court of Tennessee, have the full and final power to interpret our state constitution. Tennessee, and every state, has the sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution.") (citations and internal quotation omitted).

not challenge their sentences on Sixth Amendment grounds, I would not fault them for failing to "have prognosticated the outcome of Blakely," Smylie, 823 N.E.2d at 689, particularly in light of our decision in Graham. Because they timely raised Blakely challenges in this Court, I would vacate their sentences as constitutionally invalid and remand to the trial court for resentencing.

### Conclusion

Although I concur in the majority opinion as to its resolution of the defendants' Crawford issues, I disagree with the majority's discussion and resolution of the Blakely issues. I therefore dissent. I would hold, first, that Blakely invalidates sentences under Tennessee Code Annotated section 40-35-210 to the extent that a judge enhances the sentence beyond the presumptive sentence based on facts, other than the fact of a prior conviction, not found by a jury; second, that Blakely announced a new rule; and third, that defendants on direct review are entitled to raise Blakely claims as long as they challenged their sentences below and as long as they timely added a Blakely claim to their appeal. I would therefore vacate Gomez's and Londono's sentences and remand to the trial court for appropriate resentencing.

I am authorized to state that Justice Birch joins with me in this concurring and dissenting opinion.

_____
E. RILEY ANDERSON, JUSTICE